UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FREEDOM FOODS, INC.,

        Plaintiff,

    v.                              C-1-04-690

ROSE VALLEY LAND GROUP, LTD.,

        Defendant.

## ORDER

This matter is before the Court upon motions for summary judgment filed by plaintiff Freedom Foods, Inc. (Freedom Foods) (doc. 46) and defendant Rose Valley Land Group, Ltd. (RVLG) (doc. 49). RVLG requests oral argument on the motions

### I. Introduction

This action arises out of a construction/lease agreement for the renovation of a shopping center located in Cincinnati, Ohio. The agreement was executed between Freedom Foods, the prospective tenant, and RVLG, the general contractor/landlord, on July 14, 2003, and was subsequently amended on August 26, 2004. (See Complaint/First Amended Complaint, Exh. A). Freedom Foods filed this lawsuit on October 6, 2006, claiming breach of the agreement and misrepresentation by Freedom Foods. Freedom Foods subsequently filed an amended complaint seeking declaratory relief and an award of damages in the amount of $259,000.00. RVLG filed a counterclaim for anticipatory breach seeking specific performance or, in the alternative, damages

1

in an amount believed to be in excess of $1,000,000.00. Freedom Foods has not made a jury demand, but RVLG has done so.

Freedom Foods moves for summary judgment on its claims on the grounds that (1) its abandonment of the construction/lease agreement as of September 30, 2004, is justified by RVLG's material breaches of contract, including its delinquent performance under the contract and its failure to hire an architect qualified to determined contract compliance in all the essential phases of the project as required under the contract and its subsequent amendment, and (2) it is entitled to rescind the construction/lease agreement based upon RVLG's misrepresentation that it had retained an architect to monitor RVLG's compliance with the construction documents when the individual hired to perform this function, Kevin Sigward, was an engineer who was not qualified to perform the quality assurance function. RVLG moves for summary judgment on the grounds that Freedom Foods cannot establish the elements of misrepresentation or fraud, Freedom Foods is bound by the amendment to the construction/lease agreement, Freedom Food's non-performance under the construction/lease agreement is not excused, and Freedom Foods did not act in good faith in connection with the performance and/or repudiation of the Lease. RVLG asks the Court to affirm the validity of the parties' agreement as amended and require full performance by Freedom Foods, including fulfillment of the obligation to occupy the premises. In the alternative, RVLG seeks damages in the amount of $1,599,684.20, plus attorney fees and costs.

## II. Facts

The parties have submitted proposed findings of fact and conclusions of law in support of their motions for summary judgment, which the opposing side has marked as true, false or irrelevant. The facts set forth below are undisputed.

1. Freedom Foods is a wholly-owned subsidiary of Remke Markets, which has operated one or more retail grocery outlets continuously since 1897.

2. Freedom Foods owns and operates nine Save-A-Lot grocery stores in the Greater Cincinnati area. Freedom Foods leases each of the nine store locations from an owner/landlord.

3. RVLG is a limited liability company that was formed for the purpose of purchasing and renovating the Valley Shopping Center located at 7617 Reading Road in the Roselawn neighborhood in Cincinnati.

4. In late 2002, Save-A-Lot first became interested in locating a grocery store in the Valley Shopping Center owned by RVLG.

5. After a series of negotiations, on July 14, 2003, RVLG and Freedom Foods signed an eight-year lease agreement with options to renew in five year increments for the grocery store space (the "Lease") (See the original Complaint, exh. A).

6. Under the Lease, RVLG agreed to renovate an existing vacant space and to construct an addition to provide a total of approximately 18,000 square feet for the grocery store.

3

7.  Exhibit C to the Lease set forth the construction responsibilities of RVLG as well as those of Freedom Foods. (See exhibit to the original Complaint). Each line item was discussed at a meeting of the parties on April 30, 2003 and, by agreement, was assigned to either Freedom Foods or RVLG. The final version of Exhibit C was part of the Lease.

8.  Once the work was completed, Freedom Foods was to be a tenant and RVLG as the landlord was to be responsible for the repair and maintenance of the premises.

9.  In the parties' early discussions, RVLG decided that the most expeditious means of constructing the 11,000 square foot addition was to use a pre-engineered metal building.

10. The Lease provided that the architect for the project would have the following role:

> Architect prepares building scale elevations drawings of the four interior walls including graphic building sections illustrating column locations, location and design of entrance and exits, electrical panels, freezer slab and any finished public spaces and configuration of the spaces.
> Architect prepares (3) three sets of final requirement drawings integrating Freedom Foods architectural/mechanical/electrical/plumbing bid package requirements with the main facility requirements.
> Architect prepares project manual.
> Architect monitors construction to check for compliance with construction documents.

11. RVLG hired a structural engineer, Kevin Sigward, for the project.

12. In the spring of 2004, during the course of RVLG's construction of the expanded space for the grocery store, a series of disputes arose between RVLG and Freedom Foods.

13. After March 30, 2004, RVLG and Freedom Foods communicated through their attorneys to try to resolve the issues.

14.     On April 6, 2004, the principals in RVLG, Ted Byer and Marinko Gvozdanovich, met with representatives of Freedom Foods to discuss why the various building permits had not been obtained and why there were such lengthy delays in construction. RVLG submitted that it needed more details than those provided in the Freedom Foods requirement drawings given to RVLG in August 2003. At the meeting, Freedom Foods requested that RVLG stop construction of the building.

15.     Freedom Foods, through legal counsel, proposed an amendment to the Lease in order to incorporate a definite construction schedule into the Lease and to require RVLG's architect to monitor construction and certify compliance with the construction documents in weekly reports.

16.     RVLG added a clause to the Amendment stating that both parties agreed that the other party was in compliance with the Lease.

17.     On August 26, 2004, RVLG and Freedom Foods signed an Amendment to the Lease (the "Amendment") with a specific construction schedule. (See Amended Complaint, exh. A). The Amendment resolved all disputes between the parties and ratified the original Lease. The Amendment states, in pertinent part,

> Rose Valley and Freedom Foods hereby ratify and confirm that the Lease Agreement, as amended by this Amendment, is in full force and effect on the date hereof, and that neither party is currently in default in the performance of any obligation under the Lease Agreement or this Amendment.

18.     The Amendment identified Sigward as the architect for the project. It stated, "Through its architect, Kevin Sigward, Rose Valley has produced the integrated final requirement drawings identified on Exhibit C to the Lease Agreement."

5

19. Matthew Remke, the President of Freedom Foods, William Remke, Matthew's father and the President of Remke Markets, and Carolee Paris, a company officer of Freedom Foods, were all personally aware of Sigward's status as an engineer. Documents provided to Freedom Foods during the course of the project displayed Sigward's "Professional Engineer" title.

20. The schedule required that RVLG have the building secured by September 25, 2004, a date which had been extended on several occasions while Freedom Foods was negotiating the Amendment to the Lease with RVLG.

21. As part of the Amendment, the parties agreed to participate in weekly meetings to discuss the construction.

22. At 9:00 a.m. on September 30, 2004, the parties attended one of these weekly meetings at the job site.

23. On that same date, Sigward visited the site and prepared the fourth of his compliance reports, which he described as "progress reports." During the site visit, Sigward was asked by Freedom Foods to report on the initial electrical installation which had been done to that date, which was the installation of an electric panel.

24. At 4:38 that afternoon, Matthew Remke sent via e-mail a detailed memorandum regarding the meeting.

25. Matthew Remke never indicated to RVLG in his memorandum or otherwise that any of the items discussed during the September 30, 2004 meeting would be considered breaches of the Lease that would warrant its termination.

26.     Matthew Remke admits that he intended to proceed with the project at the time he sent
        the e-mail

27.     When William Remke read his son's e-mail at approximately 6:00 p.m. that evening, he
        called Matthew into his office and instructed him to pull out of the deal.

28.     That same evening, Matthew Remke and three other men brought a tractor trailer to the
        construction site and removed all of the refrigeration equipment that Freedom Foods had
        installed.

29.     No one at Freedom Foods informed anyone at RVLG that Freedom Foods was
        withdrawing from the project.

30.     Freedom Foods filed this lawsuit on October 6, 2004, shortly after it pulled its equipment
        from the site.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

7

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Id.* at 251-52. If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### IV. Request for oral argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument is not necessary and defendant's request for same is denied.

### V. Applicable law

#### A. Breach of contract

To prove a breach of contract under Ohio law, plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994). Parties to a contract have a duty to each other to act in good faith. *See Brown v. Otto C. Epp Memorial Hospital,* 41 Ohio App.3d 198, 199, 535 N.E.2d 325, 327 (1987).

8

Subject to certain exceptions, the right to full performance of contractual obligations by one party to a contract may be waived by the other party so as to excuse nonperformance by the first party. 13 Williston, Contracts § 39:14 (4th ed.). A waiver may be established as a matter of law only when the party charged with the waiver has expressly declared a waiver or has engaged in conduct "so inconsistent with a purpose to stand upon the contractual right allegedly waived as to leave no possibility of any reasonable inference to the contrary." *Id*. at § 39:21. Ordinarily, however, whether or not a party has waived performance is a matter of intent and a question of fact for the trier-of-fact. *Id.* Where the underlying facts are not in dispute and permit only one inference, the issue may be determined as a matter of law. *Id.*

### B. Fraudulent misrepresentation

In order to establish a claim of fraud under Ohio law, a plaintiff must prove the following elements: "a) a representation or, where there is a duty to disclose, concealment of a fact, b) which is material to the transaction at hand, c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, d) with the intent of misleading another into relying upon it, e) justifiable reliance upon the representation or concealment, and f) a resulting injury proximately caused by the reliance " *Burr v. Bd. of County Com'rs. of Stark County,* 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (1986); *see also Cross v. Ledford,* 161 Ohio St. 469, 475, 120 N.E.2d 118, 122 (1954).[1]

Fraud generally cannot be predicated upon promises or representations relating to future

---

[1] Freedom Foods cites other authorities that purportedly support its position that culpability is not an issue where a party is seeking to rescind a contract induced by false information. The Ohio Supreme Court expressly stated in *Cross,* however, that an intent to mislead is a necessary element of an action to rescind a contract procured by fraud. Accordingly, the authorities cited by Freedom Foods are not controlling to the extent they hold otherwise.

actions or conduct. *Tibbs v. National Homes Const. Corp.*, 52 Ohio App.2d 281, 287, 369 N.E.2d 1218, 1223 (Ohio App. 1977). "Representations as to what will be performed or will take place in the future are regarded as predictions and are not fraudulent, irrespective of whether the matter is before the court as an action for the deceit or defensively as a ground of avoidance of a written contract. A false assertion presupposes that an event has occurred, that a duty has been performed, that a fact has intervened or that an authority exists, either or all of which may have reduced the contract or prevented its being consummated." *Id.* (citing 24 Ohio Jurisprudence 2d 646, 647, Fraud and Deceit, Section 38.) Where one makes a "promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise," then "the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent." *Id.* at 286, 369 N.E.2d at 1222.

A party must prove not only that he acted in reliance on a material misrepresentation, but also that he had a right to do so. *Columbia Gas Transmission Corp. v. Ogle,* 51 F.Supp.2d 866, 875 (S.D. Ohio 1997) (Graham, J.). Reliance is "that degree of care which would be exercised in an average transaction between persons under similar circumstances. . ." *In re Landon,* 37 B.R. 568, 571 (Bnkrptcy. N.D. Ohio 1984). Factors to be considered in determining whether reliance is reasonable include "the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age and mental and physical condition of the parties, and their respective knowledge and means of knowledge." *Ogle,* 51 F.Supp.2d at 875 (citing Ohio cases). An individual "has no right to rely on misrepresentations when the true facts are equally open to both parties." *Id.* at 875-76 (citing *Aetna Ins. Co. v. Reed,* 33 Ohio St. 283 (1877); *Van Horn v. Peoples Banking Co.,* 64 Ohio

10

App.3d 745, 582 N.E.2d 1099 (1990)).

As a general rule under Ohio law, an individual "is expected to conduct his or her dealings with proper vigilance." *Dito v. Wozniak,* 2005 WL 19437 * 4 (Ohio App. 9 Dist.) (citing *Foust v. Valleybrook Realty Co.,* 4 Ohio App.3d 164, 165, 446 N.E.2d 1122 (1981) "Such vigilance imputes a duty upon one to reasonably investigate the truth of representations made prior to reliance thereon." *Id*. An individual must avail himself of information that is easily accessible to him. *In re Landon,* 37 B.R. at 570 (citing 24 Ohio Jur.2d *Fraud and Deceit* § 136).

## C. Rescission

Rescission constitutes "the unmaking of a contract, an undoing of it from the beginning . . ." *Wannemacher v. Cavalier*, 2004 WL 1718080, *9 (Ohio App. 3 Dist., 2004) (citing BLACK'S LAW DICTIONARY (5 Ed. Rev. 1979), 1174). In order for a court to grant the equitable remedy of rescission of a contract, it must find a breach of the contract "so substantial and fundamental as to go to the root of the contract." *Id.* (citing *Schneble v. U.S.,* 614 F.Supp. 78, 83 (D.C.Ohio 1985). "Generally, without fraud, duress, undue influence, or mistake, one party to a contract cannot rescind or cancel it without the consent of the other party." *Id.* (citing 18 Oh Jur. 3d (1980) 219, Contracts, Section 296. In order to rescind a contract on the ground that it was procured by fraudulent representations, a party must prove the elements of its claim by clear and convincing evidence. *Cross,* 161 Ohio St. at 475, 120 N.E.2d at 122; *Domo v. Stouffer,* 64 Ohio App.3d 43, 50, 580 N.E.2d 788, 792 (1989) (citations omitted).

## VI. Opinion

Freedom Foods claims that RVLG committed material breaches of the Lease by failing to hire an architect qualified to monitor compliance with various components of the project and to prepare an integrated set of construction drawings; failing to adhere to the highest standards of workmanship in the construction industry by foregoing the recommended site survey; failing to share the final version of Exhibit C with Sigward; failing to inform Sigward of his specific duties on the project; ordering a building that did not fit the site; laying plumbing lines on rocks and gravel; erecting structure without a building shell permit; failing to provide Radius Construction RVLG's subcontractor, with the permits necessary for Radius to comply with its construction schedules; instructing its engineer to do progress reports whereas the Amendment specifically required weekly compliance reports; and by failing to meet the building security date when the tenant was scheduled to install expensive equipment in the building. In addition, Freedom Foods claims that RVLG misrepresented to it that Sigward was an architect who was qualified to monitor all significant aspects of the construction. With regard to the waiver issue, Freedom Foods contends that there were new intervening causes for rescission that arose after the Amendment was signed. These were the alleged misrepresentation regarding Sigward's qualifications, and RVLG's failure to have the building secured in time for installation of the refrigeration equipment and its failure to provide an architect qualified to provide monitoring of all significant aspects of construction.

In response, RVLG contends that the breaches alleged by Freedom Foods were not material, Freedom Foods waived its right to claim a substantial breach based on conduct occurring prior to execution of the Amendment by signing the Amendment, and Freedom Foods

12

cannot prove by clear and convincing evidence that RVLG failed to have the building secured by the date established in the construction schedule attached to the Amendment so as to justify rescission of the contract. RVLG also argues that Freedom Foods failed to act in good faith in connection with performance and/or repudiation of the Lease by abandoning the contract with no notice to RVLG and by failing to offer RVLG the opportunity to cure the alleged defects in its performance. RVLG also denies that it represented to Freedom Foods that Sigward was an architect. In any event, RVLG alleges that Sigward was qualified to perform the duties required to be performed under the Amendment, and it claims that whether or not Sigward was an architect was information that was readily available to Freedom Foods.

The Court has carefully considered the parties' arguments and the evidence of record. The Court finds that there are numerous issues of material fact, including issues underlying the determination of whether either party substantially breached the parties' agreement, whether there was a waiver, whether RVLG made a fraudulent misrepresentation with regard to Sigward's qualifications on which Freedom Foods justifiably relied to its detriment, and whether Freedom Foods was justified in terminating the lease. A trial is necessary so that the trier-of-fact can weigh the evidence, resolve the numerous factual issues presented by the record, and determine whether either party is entitled to any of the relief requested.

## VII. Conclusion

In accordance with the foregoing, plaintiff's motion for summary judgment (doc.46) and defendant's motion for summary judgment (doc. 49) are **DENIED.** This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

_____
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

E:\HJWA\04-690ctrctmsjPUB.wpd

14